UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BARNEY KEVIN JAMES**, a.k.a. **JAMES KEVIN BARNEY**<br><br>Petitioner,<br><br>vs.<br><br>**WILLIE SMITH**,<br><br>Respondent. | 2:03-CV-72453-TGB<br><br>**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING CERTIFICATE OF APEALABILITY** |

Petitioner[1] is in the custody of the Michigan Department of Corrections pursuant to convictions for second-degree murder, two counts of assault with intent to commit murder, two counts of assault

---

[1] There is some confusion, caused by Petitioner, as to whether Petitioner's true name is "Barney James" or "James Barney". While litigating this case, Petitioner has used the name "James Barney" and consequently on this docket he has been referred to by that name. But even during this case, Petitioner has used both names. For example, in correspondence submitted to the Court, *see* ECF No. 33, he signs his name as "James K Barney" while attaching a prison form signed "Barney James" (ECF No. 33). In another example, Petitioner filed a pleading on January 9, 2015 in which the printed signature block reads "James Barney," but his handwritten signature is written as "Barney James." During the entire state criminal proceedings, however, he is referred to as "Barney James." (His brother, also identified in the trial transcript, is called "Eddie James".) Likewise, both the Michigan Court of Appeals and Michigan Supreme Court decisions refer to Petitioner as "Barney Kevin James" (ECF No. 61-19, 61-20). Finally, the Michigan prisoner tracker also has his name as Barney James (http://mdocweb.state.mi.us/OTIS2/otis2.aspx). The case caption will now be corrected and changed to "Barney Kevin James, also known as James Kevin Barney," but in this Order the Court will refer to the person who filed this petition as "Petitioner."

with intent to commit great bodily harm, and possession of a firearm during the commission of a felony. Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.[2] On January 13, 2015, the Court granted Respondent's motion to dismiss on the ground that the petition was not timely filed and denied a certificate of appealability (COA). *Barney v. Renico*, No. 5:03-cv-72453 (E.D. Mich. Jan. 13, 2015). Petitioner appealed the dismissal. The Sixth Circuit Court of Appeals denied Petitioner's COA application. *Barney v. Bergh*, No. 15-1188 (6th Cir. Aug. 6, 2015). On rehearing, the Court of Appeals vacated the order of dismissal and remanded for further proceedings. *Barney v. Bergh*, 2016 WL 11221084 (6th Cir. 2016). The Court ordered Respondent to file a supplemental brief and allowed Petitioner 45-days to submit a reply brief. (ECF No. 59.)

The petition raises nine claims for relief. Respondent argues that these claims are procedurally defaulted and, alternatively, meritless. For the reasons set forth, the Court finds that Petitioner is not entitled to relief on his claims and the petition will be denied. The Court also denies

---

[2] This case was recently reassigned to the undersigned District Judge, pursuant to Administrative Order 20-AO-003, upon the retirement of the Honorable Avern Cohn.

a certificate of appealability and grants leave to proceed *in forma pauperis* on appeal.

I. **Facts and Procedural History**

Petitioner's convictions arise from a shooting in Detroit on August 19, 1996. Eleven-year-old James White was killed by a gunshot to the head and fifteen-year-old Derrick Sanders suffered a gunshot wound to the leg.

The prosecution theory was that Petitioner either fired the gunshot that killed James White or, if he did not fire the fatal shot, he participated in the offense as an aider and abettor. Petitioner's defense was two-fold: (1) he argued that he was not present at the scene and that witnesses who identified him as the shooter or as being present were mistaken; and (2) even if Petitioner was among the perpetrators, the intent at the time was to scare and terrorize, not to kill.

The shooting occurred on Brush Street sometime between 9:30 and 10:30 p.m. Paula White,[3] James White's mother, testified that she had left her son in the care of a neighbor that evening at their home on Brush

---

[3] To avoid confusion, the Court refers to all individuals with the surname White by their first names, with the exception of the victim James White. He will be referred to as James W. so as not to be confused with Petitioner.

3

Street so that she could move a carload of belongings to their new home a few blocks away. (ECF No. 61-12, PageID.1575-76.) She heard gunshots coming from the direction of her home and drove back that way. (*Id.* at PageID.1577.) When she arrived, the shooting had stopped and she saw her son lying in the street with a gunshot wound to his head. (*Id.* at PageID.1579.) She also saw four men in a nearby field running away from Brush Street. (*Id.* at PageID.1585.) At trial she identified the four men as Petitioner, his brother Eddie James, Anthony Myles, and Reginald Vines. (*Id.* at PageID.1589-1591.) She testified that each man was holding a gun, but also admitted to testifying at Myles' and Eddie James' trial that she could not see their hands. (*Id.* at PageID.1612-13.) In a statement to Sergeant Stevenson shortly after her son died, Paula White identified the men she saw running from Brush Street as Petitioner, Eddie James, Nataurus McIntosh, and Joe Bell. (*Id.* at 1605.)

Joseph White, the victim of one of the assault with intent to murder charges, was the uncle of James White and Paula's brother. (ECF No. 61-13, PageID.1773.) He testified that on the night of the shooting he was standing on the front porch of a home on Brush Street with Derrick Sanders, Kylon Stanford, and Solomon Grandberry. (*Id.* at 1773-74.) He

4

heard gunshots and saw four men approaching on foot. (*Id.* at 1780.) He saw at least two of the men carrying rifles. (*Id.* at 1781.) He identified the four men as Petitioner, Eddie James, Reginald Vines, and Anthony Myles. (*Id.* at 1782-85.) Joseph White and his friends immediately ran. (*Id.* at 1789.) They heard more gunfire and Sanders was shot in the leg. (*Id.* at 1790.) Joseph heard more than 50 gunshots. (*Id.* at 1788.) He testified that neither he nor his friends were carrying guns that night. (*Id.* at 1789.) Joseph admitted that in his initial statement to police he had identified only Petitioner and Petitioner's brother Eddie and stated that he had not had time to identify anyone else. (*Id.* at 1797.)

Derrick Sanders testified that he suffered a gunshot wound to the leg. (*Id.* at PageID.1920.) He identified Petitioner as one of the shooters, though he admitted that his identification was based on seeing a light-skinned man with a ponytail, not from seeing the man's face. (*Id.* at PageID.1918-19.) The morning after the shooting, Sanders told police that he did not see who had done the shooting. (*Id.* at PageID.1927.) At trial, he explained that he did not name Petitioner as a shooter in his first interview with police because he did not feel like talking at the time. (*Id.*)

5

Maronda Bell testified that, on the night of the shooting, she saw Petitioner walking toward the neighborhood where the shooting occurred. (ECF No. 61-14, PageID.1962.) Petitioner was carrying a handgun in each hand. (*Id.*) She heard a whistle and then saw Petitioner's brother, Eddie James, carrying a large gun walking in the direction Petitioner had gone. (*Id.* at PageID.1965.) About five minutes later, Bell heard gunshots. (*Id.* at PageID.1966.) Similarly, Trinisia Evans testified that on the night of the shooting she saw Petitioner walk past her house carrying two handguns. (ECF No. 61-15, PageID.2223.) A few seconds later, she heard Petitioner whistle and saw Eddie James grab a long rifle and walk in the same direction Petitioner had walked. (*Id.* at PageID.2225-56.) Moments later she heard gunshots. (*Id.* at PageID.2228.)

Petitioner presented a single witness in his defense, Lakisha Thomas. She testified that she was close to the area where the shooting occurred and looked in the direction of the gunshots when she heard them. (ECF No. 61-16, PageID.2573.) Although she was directly across the street from the field where the gunmen fled, it was too dark to see any faces or to even tell how many gunmen there were. (*Id.* at 2574.)

6

The defense used Thomas's testimony to question the credibility of the witnesses who identified Petitioner as a gunman because those witnesses were farther from the shooting than Thomas and, Petitioner argued, would have been unable to see the gunmen's faces.

Following a jury trial, Petitioner was convicted and sentenced as follows: life imprisonment for conspiracy to commit murder, thirty to eighty years for second-degree murder, twenty to sixty years for each of the two assault with intent to murder convictions, six to ten years for each of the two assault with intent to commit great bodily harm less than murder convictions, all of the foregoing to be served concurrently, but consecutively to two-years imprisonment for felony-firearm conviction.

Petitioner raised an appeal of right in the Michigan Court of Appeals raising three claims of error by the trial court: (i) giving an incorrect jury instruction for conspiracy to commit first-degree murder; (ii) refusing to instruct the jury that the Petitioner's actions must be the cause of death; and (iii) excluding evidence that the White family had firebombed the homes of Petitioner's mother and Vines' mother after the shootings. The Michigan Court of Appeals reversed Petitioner's

7

conspiracy conviction and affirmed in all other respects. *People v. James*, No. 211331, 2001 WL 704159 (Mich. Ct. App. March 20, 2001).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. In his application, Petitioner included two of the claims that were unsuccessful before the Michigan Court of Appeals and an additional claim: that he was entitled to resentencing following the reversal of his conspiracy conviction. The Michigan Supreme Court denied leave to appeal, *People v. James*, 465 Mich. 972 (Mich. Apr. 9, 2002), *reconsideration denied* 466 Mich. 887.

Petitioner filed a habeas corpus petition in June 2003, raising nine claims. Respondent moved for dismissal on the ground that the petition contained unexhausted claims. The Court dismissed eight of Petitioner's claims as unexhausted and stayed proceedings with respect to the one exhausted claim. (ECF No. 31.)

A couple of months before filing his habeas petition, Petitioner filed a motion for relief from judgment in the trial court raising the same nine claims raised in his petition. The trial court denied the motion on May 27, 2005. *See* 5/27/2005 Order, *People v. James,* No. 97-03228-01 (ECF No. 43-3). The Michigan Court of Appeals denied Petitioner's application

8

for leave to appeal on August 16, 2006. *People v. James*, No. 268271 (Mich. Ct. App. Aug. 16, 2006). Petitioner then had 56 days to appeal to the Michigan Supreme Court. Petitioner failed to file his appeal within 56 days, and his untimely appeal was rejected by the Michigan Supreme Court on October 17, 2006. *See* 9/16/2014 Affidavit of Larry Royster, Clerk, Michigan Supreme Court (ECF No. 43-5).

On December 11, 2013, Petitioner filed a motion to lift the stay in this Court, which the Court granted. (ECF No. 37, 38). Petitioner filed an amended petition, raising these claims:

> I. Defendant was denied his federal right to the effective assistance of trial counsel when counsel failed to object to errors throughout the trial.
>
> II. Defendant denied due process of law by a conviction against the great weight of evidence & proofs insufficient to prove guilt beyond reasonable doubt.
>
> III. Defendant was denied due process and a fair trial, when trial court admitted identification evidence tainted by unduly suggestive pretrial procedures and conducive to irreparable mistaken identification, without an independent basis.
>
> IV. Defendant was denied his federal right to counsel at the pretrial identification procedure, where he was the focus of police investigation.
>
> V. Defendant was denied due process and a fair trial when trial court admitted the testimony of Paula White in violation

of the witness sequestration order and contrary to representation of prosecution.

VI. Defendant denied due process and a fair trial, when trial court admitted the testimony of Nataurus McIntosh and Maronda Bell, when such testimony was coerced by police threats, and was inherently unreliable.

VII. Defendant denied due process and a fair trial, when prosecutor solicited false testimony, he knew to be false and failed to correct it when it appeared.

VIII. Defendant's pre-arraignment statement must be suppressed where it was taken in violation of his federal right to remain silent. Further, where the statement was coerced by prolonged interrogation and promises of leniency by police.

IX. Defendant was denied his federal right to the effective assistance of counsel where his appellate attorney did not raise the above issues in his appeal by right.

Respondent filed a motion to dismiss on the ground that Petitioner failed to comply with the terms of the Court's stay order. (ECF No. 42.) The Court granted the motion. (ECF No. 44.) The Sixth Circuit Court of Appeals initially denied Petitioner a COA, but, on reconsideration, vacated the Court's order dismissing the petition and remanded for further proceedings. *Barney v. Bergh*, No. 15-1188, 2016 WL 11221084 (6th Cir. Sept. 6, 2016).

On remand, the Court ordered Respondent to file a supplemental answer to the amended petition and allowed Petitioner 45 days from the

filing of a supplemental answer to file a reply. (ECF No. 59.) Respondent filed an answer contending that the petition should be denied because all of the claims are procedurally defaulted, and, alternatively, all are without merit. Petitioner did not file a reply.

## II. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court

11

decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

Respondent argues that all of Petitioner's claims are procedurally defaulted. The Court finds that Petitioner's habeas claims, which were first raised in the state courts on post-conviction collateral review, have not been fully exhausted in the state courts and are now procedurally defaulted. The claims therefore cannot provide a basis for habeas corpus relief.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal

constitutional claim in state court. S*ee* 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The claims must also be "fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual and legal bases for the claims in the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420 n.3.

Petitioner did not properly exhaust his claims in state court. Petitioner first raised his habeas claims in his motion for relief from judgment. The trial court denied the motion and the Michigan Court of Appeals denied leave to appeal. He did not timely seek leave to appeal in the Michigan Supreme Court. There are no exceptions to the 56-day time limit for seeking leave to appeal in the Michigan Supreme Court. *See* Mich. Ct. R. 7.305(C)(2), (5).

Petitioner's claims are therefore unexhausted. No state court remedy is available to Petitioner to properly exhaust these claims because he already filed a motion for relief from judgment with the state trial court. Under Michigan Court Rule 6.508(G)(1), a state criminal defendant is generally permitted to file only one post-conviction motion for relief from judgment. Petitioner's claims do not fall within the exceptions for filing a second motion, *see* Mich. Ct. R. 6.508(G)(2) (exceptions include a retroactive change in the law or newly-discovered evidence and waiver of the rule due to a significant possibility of innocence). The Court, therefore, will not dismiss the petition because requiring Petitioner to return to state court would be futile. *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).

When a habeas petitioner fails to properly present a claim to the state courts and is barred from pursuing further relief under state law, the petitioner has procedurally defaulted that claim for purposes of federal habeas review. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)). Petitioner has not fully exhausted his habeas claims in the state courts and no longer has

an available remedy to do so. His claims are now procedurally defaulted. Procedurally defaulted claims will not be considered on habeas review unless the petitioner can show cause to excuse the failure to exhaust and actual prejudice resulting from the alleged constitutional violation, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Hannah,* 49 F.3d at 1196 (*citing Coleman,* 501 U.S. at 750-51).

Petitioner fails to establish cause to excuse the procedural default. To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner argues that his appellate attorney was ineffective for omitting these habeas claims on state court direct review. His appellate attorney's failure to raise these claims on direct review, however, does not excuse or explain Petitioner's failure to exhaust these claims in the Michigan Supreme Court on state-court collateral review. *Gadomski v. Renico*, 258 F. App'x 781, 784 (6th Cir. 2007). Because Petitioner fails to establish sufficient cause to excuse his procedural default, the Court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

15

Thus, these claims are procedurally defaulted and barred from review unless Petitioner can demonstrate that a fundamental miscarriage of justice occurred. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The miscarriage of justice exception applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To be credible, a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner fails to meet the actual innocence standard. His argument that his claims are meritorious[4] does not establish actual innocence. He has failed to present evidence such that a reasonable juror could have found him not guilty. Therefore, these claims are procedurally barred and do not warrant habeas corpus relief.

## IV. Conclusion

---

[4] Although it is not necessary to engage in a claim-by-claim analysis because Petitioner has procedurally defaulted, the Court notes that the Answer filed by the State carefully examines each of Petitioner's claims and marshals the applicable facts and law in such a thorough manner that the Court is confident that none of Petitioner's substantive claims have merit, for the reasons set out in the State's detailed brief.

16

The Court concludes that Petitioner is not entitled to federal habeas relief on his claims because they are procedurally defaulted. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his claims and jurists of reason would not find the Court's procedural ruling debatable. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision may be taken in good faith. Accordingly, the Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.

DATED: March 31, 2020

BY THE COURT:

s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge